May it please the Court, Casey Donovan for the petitioner, Leonard Moore, who is a now 61-year-old, but was a 48-year-old African-American at the time of his arrest and discharge back in March of 2009. He was beginning his 13th year of incarceration. He had never been arrested for anything in his life before that. The question here is whether the exclusion of evidence of the victim's prior claim of rape against a prosecution witness violated the petitioner's Sixth Amendment rights to confront witnesses and present a complete defense. And we urge the Court that the answer is a resounding yes. Did she ever say she was raped? In terms of the way that you formulated the question and in the way that the certificate of appealability was formulated, didn't she say she didn't even think he had committed a crime? She said that her report to the SART nurse several days later was that she did not remember the incident because she was so intoxicated. But to her friend, Ms. Roberts, who was the witness, she said that she did not consent. I thought she said that if she was sober, she would not have consented. If she was sober, she would not have consented. But the reality is that she had been bruised, battered, and told her friends that and told them that she was going back. I think the critical issue with respect to this is that under Olden's stuff, the question is really not whether there was a false accusation is the key here. Whether it technically falls under a rape charge is, according to Olden and Davis and all the cases, basically besides the point. The issue is, did he have a fair trial here? I'm going to get to standard review in a minute, which I think is going to be very troublesome for you, as I'm sure you understand. But let me understand first what she expected to show by the testimony of the, I'll call it the earlier sexual encounter a couple of days before with Holmes. What was that evidence going to do for her? For him, you mean for Mr. Moore? The defense had made it very clear to the trial judge that their defense was, he said, she said, she was lying, it was consensual sex, and that she was not believable. And he laid out the basis that almost identical conduct, two days before, she comes into town, a strange town where she's never been before, has sex with an African American she's never met before, once in the jacuzzi, twice in the shower, wakes up the next morning, complains and says she doesn't remember what happened, and that whatever happened, it wasn't consensual. And the relationship between her and the first man is? Total strangers. He was a roommate in the house where she was coming to stay when she was there. She had never met him before. Roommate of a relative of hers? Apparently, yes. But what was, and the key here is that the trial judge who listened to the entire proffer found it relevant and then found it devastating to the character and to the people's case and precluded it completely. Almost the exact same language as the trial judge and the court of appeals in Olin. Almost the exact same language, devastating to the character, because this is South Bay, San Diego, even though it's 2000, it's far below the Mason-Dixon line, and this was a white woman who had said that she had had sex with a black woman, and the judge said, this is devastating, and we're not going to let it in, we're keeping it out completely. And totally altered the whole thing. You were on the background in the California courts. The California courts said that it was an abuse of discretion. That's correct. And nobody, I don't think that the state of California is arguing otherwise. Well, the issue here is. . . The issue is harmless error. Right. But what they found error was the lighter side, the intoxication, the loss of memory, the factor of unable to remember, whereas the courts have always held that the core issue of the Sixth Amendment is where it's line and credibility. And the court of appeals found it wasn't error with regard to bias, motive, or interest. And it found it based on one simple fact. It didn't cite any state law. It didn't cite any federal law. It said because she got into a car with Mr. Moore on the night of the incident, that that defeats, because she cuddled next to him, that defeats the defendant's whole theory of the case. That's the statement of the court of appeals. No cases cited, no law cited, just that. And the fact is that that is an objectively unreasonable interpretation of the facts here because, as I've pointed out, two key issues here. Both the trial court and the court of appeals and these people are saying that what happened here is because they both said there was a gun involved and because he cuddled next to her in a car. Well, there was a gun involved, wasn't there, when you say they said there was a gun involved? No real gun was ever found. Was the man on his knees? That's what he said. No, was he or was he not? Are you saying he was not on his knees? That didn't happen? Yes, from our point of view, because you have to remember the... In other words, you want us to re-try it. He didn't get a fair trial. This is the issue. Mr. Holmes, who they wanted to interrogate about this prior relationship, was the only other witness. The man who had sex on Thursday was the man who said that he was on his knees with a gun and that they drove off. He was the only... Are you saying that or was it so? Excuse me? Because he told Mr. Holmes' initial story. Does the record show that someone saw him on his knees? Are you saying the only evidence... Holmes is the person who said he saw him on his knees and Taylor says that she said she saw him on his knees. But the point was that Mr. Holmes' initial story to the police was, on there on the other side of the border with Ms. Taylor, a car stops. The driver gets out with a gun, points to that knee, tells the woman... The passenger gets out of the car and puts Ms. Taylor into the car and the car drives away. That's the initial story. You know, it doesn't help us if you're going to talk about some fantasy instead of the case. Doesn't he say why he told a lie? Yes, he tells, but this is the whole point. And doesn't he say... So, can you ignore that or do you want us to ignore it? No, I don't want you to ignore it, but the point was, and what's missing here... He lied and he said why he lied. He was ashamed to have it known that here was a person left in his care and he didn't care for her. So he told a lie. Isn't that what the record shows? That's what the record shows. What the defense wanted to show and what they should have been permitted to show was the real reason he was supporting the story was because he was afraid he would be charged for rape for what happened two days later, two days earlier. And that he could have been charged. And when he went to the hospital that night, she wouldn't see him because the vaginal tears had been caused not by what happened with Mr. Moore, but what happened two days earlier. He was afraid that he would be in the same position as Mr. Moore. That's why he changed his story. His initial story was, I was outside the car. His initial story, I was never in the car at the time of trial. I'm sorry, you gave the explanation, but his story, without having had any prior contact with the victim, was consistent with hers. You would have to have assumed that somehow they both simultaneously made up the same story. Well, Your Honor, this is where I think all the judges have missed the point. If you're going to tell, if you're saying he's afraid, he's embarrassed because of his friends. That's why he told this lie. I'm not saying, I don't have to prove one thing or the other. I'm just reminding you of what the record says. But what the defendant wanted to show was the fact that he told the police that a gun was involved in a kidnapping is not unusual. If you're going to the police and saying, this person I was with was kidnapped, you'd have to say some reason why it happened. All he said was that she was kidnapped at gunpoint. A completely different version than her version, where she says they had gotten into the car. And all the defense wanted to do was say, exposed to the jury for cross-examination, that he had a possible motive to lie. Because the thing that the jury never heard, they never heard that there was anything non-consensual about the prior sex. They never heard, there was not one cross-examination, and neither witness, neither Taylor nor Holmes, was ever cross-examined about the prior sexual encounter. I feel like you indicated before, and maybe I misheard you, that she had lied. I thought you said she had lied about what happened. Yes, but no one ever heard that. No, no, what was the lie? Was she telling the truth about what Holmes, that Holmes allegedly had sex with her and she would have never consented to it if she wasn't drunk, or was she telling the truth? I thought you earlier indicated about her lie. What was the defense view? Was she telling the truth? The defense view that this is a woman who has consensual sex and then lies about it, and says it wasn't consensual. And this is what we want to show the jury, that this man who had never been arrested, who had put his own name in the hotel registry, and was saying it was consensual sex, is saying this is a woman who drinks, has sex with black men, then regrets it and tells a lie. And we are entitled to show the evidence that supports that, and entitled to have the jury hear that and make a credibility determination. And all of the settled federal law from the Supreme Court says that in that circumstance, you are entitled to do that. The rape shield law folds. You are entitled on a credibility, yes to yes, one to one. He said, she said, you are entitled. And what was the basis for you to argue that what she said on the morning after she had sex with Holmes, that she was lying? Because she was saying that she would, first of all she said she did not remember anything. And if she did have sex, that... Well, not remember. I mean, she had a clear recollection. She was able, in terms of what happened subsequently, she was able to take the police to the very room where she said she had been raped, and the very motel in which she had been raped. So she obviously had a clear recollection of what went on. So you're saying you wanted to argue to the jury that she had made a false claim of rape. Yes, yes. And just in the factual terms... And what was the basis for the claim that it was false? How would you have proved that? Because he said that it was consensual. Because he said it was consensual, and when she told him to stop, he stopped. I mean, this is... And what's going on here is that it was made clear what the defense was. This was the court's defense. And it turned the entire trial on its head. The police, the district... I'm confused. So now, you started off by saying, when I asked you, how do you... Is it true that she was raped, and is the act as a description, even in the certificate of appealability, correct? You said, yes, she was bruised, and she had all these marks, and it was quite clear. No, no, she was not. It was a false claim of rape. In other words, the theory of the defense was that this is a woman who has sex, regrets it, and lies about it. And he's saying, and all I want to show is there's two witnesses in this case, the woman and the black sailor, and they had a motive to lie. He to protect himself from an alleged charge of that, and she because she's embarrassed because this is what she does. And the jury never heard it. And this is the problem with the district court's opinion, because they go through the entire Brecht analysis and talk about how the rape came in, et cetera. And so, therefore, it's not substantial. But there was never any evidence. The jury never knew that there was any nonconsensual issue between Holmes and Taylor. Okay. We got that. Let's hear from the State, and you're well over. No problem. But we will make sure to give you a chance to say what you need to say. Thank you very much. Good morning. May it please the Court. Charles Ragland, Deputy Attorney General for Respondent. Your Honors, there was no allegation of rape. The victim in this case said that she did not remember what happened on that Thursday night. She was later told that she had sex. She said she didn't remember it, and she would not have consented if she was sober. Nothing about that is an allegation of rape, and nothing about that is false. Is there any uncertainty as to whether or not there had been sex two nights before with Holmes? No. The parties stipulated that there was sex. So you're trying to say, well, maybe there was, maybe there wasn't. She only said it after, you know. I think it's clear that there was sex two nights before with Holmes. Correct. Yeah, okay. But there's no allegation that it was rape, was my point. Now, the Court of Appeal, or excuse me, the trial judge, when he excluded the evidence, he did not exclude it for the reason that Petitioner's Counsel just said, similar to Olden. He didn't exclude it because it would reflect poorly on her that she had sex with a black man. He specifically excluded it, and he made this clear in the record when he denied the motion for new trial at page 1184 of the reporter's transcript. He excluded it because the use of it would have violated the rape shield law. Just as Petitioner's Counsel has argued here, the reason why they wanted that event in is because they wanted to argue that two days before she had sex with a black man, so two days later she would have sex with a black man. That is specifically prohibited by the rape shield law. That is not a permissible use of that prior sexual conduct. The Court did not find that it affected her credibility because it wasn't a false claim of rape. There was a narrow ground that the Court of Appeal found that this evidence was relevant on, and that was her recall, her ability to remember the events of the night because she was intoxicated. She was intoxicated that Thursday night and couldn't remember anything, so the Court of Appeal concluded that on Saturday night she was similarly intoxicated. The jury should have been able to consider the fact that she didn't remember consenting to sex two days before, and that could have been relevant to the defendant's claim of consent on Saturday night. They did not find, they actually specifically found she did not make a false claim of rape, so the Court of Appeal found that it did not go to her credibility. It did not undermine her credibility at all. That is what makes it different from Olden and these other cases where the excluded evidence creates a motivation to lie. In Olden, there was a motivation to lie and falsely accuse the defendants of rape so that the victim could protect her relationship with her boyfriend who saw her dropped off by the defendants. In this case, there was no motivation for her to falsely accuse these defendants of rape. She was dropped off at the trolley station, immediately was hysterical, crying, reaching out to anyone who could help her. They called 911 from the trolley station, she's crying, hysterical on the tape, and she says that she was kidnapped, that the defendants had a gun, that they threatened to kill her, and that she was raped. All of this without having any time to confer with Holmes, who similarly reported that she was taken at gunpoint and a gun was pointed at him. He was on his knees at the back of the car. She also testified that she saw him on his knees in the back of the car. So the initial discrepancy in his story, the initial part that he left out, that he actually told her to get into the car, it didn't overcome the fact that they both reported a kidnapping at gunpoint without having a time to match their stories. Now, the Petitioner's Counsel says that the Court of Appeal relied only on that fact. That is not true. They relied on the convincing force of the testimony by Holmes and the victim. The trial court even remarked that the convincing force of this case was the credibility of those two witnesses. Their testimony came across as very credible. The other corroboration came from the recall of this victim. Even if they would have had the evidence that she couldn't remember where she consented on Thursday night, it wouldn't have overcome the evidence that she had a clear recollection on Saturday night of what had happened. As Justice Corman pointed out, she was able to lead them back to the motel and she remembered other very specific details of what happened and her account of the story was corroborated by other evidence. The other part of this case which distinguishes it from the cases that Petitioner relies on is that the defense in this case was really incredible. The defendant, his story about the victim coming on to him immediately as she comes up to the car, was inconsistent, his explanations were not well-founded, he gave a fake address at the motel. He did give his true name, but that was only because he had to actually show his driver's license to rent the room, but he told them that the address... That was refuted, Your Honor, because a week before, he checked into the same hotel and used his real address. So that and his marital status at that time was the same, and a couple of months before that he had checked in and used his same address when his marital status was the same. He was cross-examined with that. I should know this, but I don't. Was there any evidence in the record as to the circumstances involved when he checked in those two prior times? No, it was just the registration card. So we don't know whether he was checking in with his wife? No, he admitted on... He admitted on the second registration with his correct address, a different female, not his wife, and when he was confronted on cross-examination of the lack of an explanation for why he used his real address on those previous occasions, he had no explanation for it. And he did say that he was concerned about his wife finding out on those other occasions as well. And wasn't there some... he didn't really give his exact license plate number. Wasn't there some transposition of numbers? Right, there was transposition of numbers for his license plate for his car. On the night in question? Yes. There is one thing I wanted to point out in preparing for this case. I noticed on page 19 of my brief, my entering brief, there's a statement in there that says that Holmes and the victim identified the gun in the picture of Meza. That's incorrect. It was Holmes only that identified the gun in the picture of Meza, so I wanted to point out that that was an error on my part in the brief. If the court has no questions, I'm prepared to submit the case. This is in no way critical. You're accustomed, of course, to arguing in front of the state courts. The state court appeals judges or justices. I noticed you addressed Judge Corman as Justice Corman. My apologies. I forgive you. Thank you. There's an old joke. When lawyers do that, there is no justice on the Ninth Circuit. Thank you, Your Honor. Would you like a minute? No, I'm fine. I'd like a little more than that. I think we pretty clearly understand. I really think that your donors are missing it. The point is that the jury should have heard about whether it was a false claim of rape or whatever it was. This was the core of his defense. The jury should have heard that evidence. Most ridiculous is that the prosecution benefited every stage. They kept everything out. There was no Sartners. There was no cross-examination of DNA. This was all precluded. Is there any issue on this appeal about not being able to use DNA evidence? No. There was no witnesses. It was such a strained case. In other words, if you look at what I've shown in Mr. Holmes' testimony, was there any reason why Ms. Holmes Taylor was mad at you? No. The whole cross-examination is total fabrication because everything had to be stood on its head. Then he gets on the stand and says, the prosecutor asked him, why was she having pain? He says, because that guy, Holmes, had sex with Holmes the other night and denied it. He says, because she had a relationship with another person. It was stipulated. The jury knew that they had sex that night. How was that used? That's the point, Judge. They never had anything about the fact that she said it was non-consensual. The prosecution gets up on summation and repeatedly, and this is, again, all the cases say that when the prosecution uses the evidence against it, it shows the violation. She gets up and says, Mr. Holmes had no motive to lie. He had no reason to lie. They've not been able to show you any reason why these people had any reason to lie. I'm not persuaded. I think it's a pretty far-fetched argument that he was testifying the way he was at this trial because he was afraid that she would charge, accuse him of rape and that he would be charged with rape. That sounds like a totally far-fetched argument to me that I don't see the jury buying. Well, if you look at all the cases that have held that cross-examination is critical, do any of the judges deny that it might have affected the jury's analysis? It would have had a substantial and injurious effect, and those words under Brecht v. Abrahamson suggest that the fact that it might have had some effect is not enough. My own view of the significance of this is I think it's a totally far-fetched argument that would have gone nowhere. And then we've got a filter Brecht through EDPA. So there are layers of deference here that we've got problems with. I'm just so... I've been doing this a long time. For a court to find, and in this case, that it was error to keep this evidence from the jury, that the court of appeals clearly said it was error, that the trial judge erred. The jury should have heard that Mr. Holmes and Ms. Taylor had sex two days before and then cross-examined on it so those jurors could make a credibility determination as to whether those people were telling the truth. And then to say that in this day and age that that's harmless? On a case like this, that could be harmless? That's like Maria Shriver being charged with child abuse and the two witnesses are the governor and the maid, and the jury never finds out that they had a child between them. Okay. We got it. I appreciate Your Honor's extra time. I don't know whether the jury could have believed or disbelieved him. I mean, the reality is that when a defendant takes a stand for all practical purposes, his fate is in his own hands. He almost relieves the government of its burden of proof and assumes the burden of proving that he's innocent. I understand that, Judge, but the truth of the matter is that if the court had ruled correctly and allowed the cross-examination, there may never have been a defense because the jury would have had an opportunity to view the two critical witnesses as to an event that was almost identical and decide, if the prosecution was right and they're telling the truth, the jury would say, of course, this is nothing. This was no crime. He couldn't have possibly prevailed in this case without taking the stand. It's a practical matter. I mean, I just don't believe that he would not have testified. You can't. The reality is it's not so much jurors drawing inferences from failure to testify as that there's simply only the prosecution's case and nothing from the defendant, and it's almost impossible to win a case like this without testifying. I understand that, Judge, but the point is that of all these cases, Holly, Franklin, where the Ninth Circuit has granted the habeas, it's because of prior actions of the core witness where the jury was denied the ability to hear the evidence. And here we have that exact position where they did not hear it, and, in fact, it was used to the detriment by the prosecution. And the man is going 34 to life. Thank you very much. Thank you. Thank you for your argument. And I've seen Judge Corman in 17 years. My name is Casey Donovan. I practiced first report, Your Honor, many years in Eastern District. I remember the name. Yeah, sure. And I left for California many years ago. Wish I could. Yeah. The case of Moore v. Cadis submitted. And if either of you would prevail on Congress to repeal AEDPA, I would be deeply grateful. Okay. Next case, Bantham v. Farquharie submitted on the briefs. And while I'm at the housekeeping, Reynoso v. Los Angeles is also submitted on the briefs. The next argued case, United States v. Sanchez.
judges: Korman, Farris, Fletcher